May it please the Court, not a great way to begin, but I apologize for the state of the record. My references in the opening reply brief may not correspond to the excerpt of the record and some documents from the excerpts may be missing. This appeal is made on three grounds. The Bankruptcy Court erred on the burden of proof, the Bankruptcy Court did not provide appellant due process, and the judgment was not supported by the findings. I'd like to begin with that last ground first. If this was a 727 adversary with a record before the court today, I believe appellant would win. All the actions complained of by appellee could and should have been corrected by simple amendments to the bankruptcy petition. And once properly amended, what do you have? The debtor transferred a farming business that was woefully underwater by both a marketer's lien and IRS lien. The fact that I could not get this across to Judge Barish is one of the great regrets of my career. There was no intent to manipulate the system because there was no need to manipulate the system. Despite whatever innuendo appellee will try to convince this court of as a finding of fact, appellee simply cannot overcome that there was no damage caused to this estate by any omission by appellant. I also want to be clear, the debtor is an honest man. I have represented him on three occasions. To my knowledge, he has never intentionally lied. During the time I've known him, he paid off an equipment lien of $240,000 to Cal Coastal Rural Development long after the equipment had depreciated. Even as to appellee, he paid her hundreds of thousands of dollars before he could no longer do so. Unfortunately, his petition was replete with errors that he immediately and readily admitted to prior to the confirmation hearing. And bear in mind that appellant experienced the death of a son two days before his schedule, statements, and plan were due. His counsel, me, was in severe chronic pain caused by ruptured discs, and there is a language barrier and maybe a cultural one, too, that makes our communication difficult. Bottom line, if the state of the record was better, there is no case here. There was no harm to the estate and no harm to creditors. As to due process, if this was a Chapter 7 case, the judgment that appellee obtained is comparable to one under Section 727. This judgment was attained essentially without discovery, without FRCP Rule 26 or Local Bankruptcy Rule 7026 disclosures, without a status conference, without a pretrial conference, and without opportunity for mediation. Until the last hearing, which was a dismissal motion made by appellant, all the hearings that were held were on plan confirmation. Chapter 13 plan confirmation, as I bet you know, differs significantly from Chapter 11. They are heard in large bunches and are typically fast proceedings. If there's a trouble in a petition, the trustee demands amendments and the case goes forward or it's dismissed. In my many years of filing Chapter 13 cases, I've never had a perfect one. Each and every case has had a trustee's objection and each of those cases where the problem wasn't managed, the case was dismissed without prejudice. I believe this is routine procedure for Chapter 13. By contrast, this confirmation was a marathon and the time between hearings was so long that the Bankruptcy Court appeared to forget certain facts, such as that the court had been shown that the equipment and crops had been secured by UCC1 in favor of Veg Fresh and that appellant had sought to assign the Gugio lease first to Appellee, although she denied it, and then to operator Catarina Cortez and then Mauro Rodriguez. And the deliberation on the evidentiary hearings was still in effect six weeks after the final briefing, whereupon the IRS filed its proof of claim and plan objection, which ultimately led appellant to move to dismiss the case in response. Bankruptcy Court's reliance on that record where the burden of proof was opposite of how it should have been treated is a denial of due process. Can I ask you a question? Going back to something you said earlier, and that is you point out or you said there was no opportunity for discovery. Did you request an opportunity for discovery? And if so, when and where? If I said that I misstated. There was very limited discovery. It consisted of a document request by the appellee and which we responded to. All right. I may have misheard you. That's all right. Please. By the time the briefing was done, oh, also the way the briefing was done was unfair. The briefs were submitted simultaneously, even though appellant had the burden of proof in establishing good faith in proposing the plan. Since it was appellant's burden, he should have had the last word. And finally, as noted in Ellsworth, which is at 455 BR 904, dismissal with prejudice is a two-step process. Once cause for dismissal is established, alternatives to dismissal of prejudice are considered. Appellee asserts this was done, but appellant contends that the record speaks for itself. Before earnest discussion of alternatives could take place, Judge Barrett shut it down. The entire discussion is contained in appellant's opening brief at page 14. As to the burden of proof, the bankruptcy court held several hearings on plan confirmation. At the end of the evidentiary presentation on June 20, 2019, the court asked for closing briefs in lieu of argument. He asked that the party specifically address the issue of burden of proof. Judge Barrett made it plainly clear that the burden of proof would have an impact on his decision. Ultimately, both sides agreed that it was the debtor's burden of proof to establish good faith in terms of planning confirmation under section 1325A3, and that the burden does not shift if rebuttal evidence is established. But neither side addressed the burden of proof for dismissal of case with prejudice. Ellsworth and the cases it relies on hold that dismissal for bad faith under section 1307C rests with the party seeking dismissal. Judge Barrett made it clear that he was uncertain about the debtor's motivations at the conclusion of the evidentiary hearings. He called the record imperfect and that there were gaps in his understanding. Judge Barrett did not mention the value of the old equipment that was transferred to Clara Galvan, but he placed a significant value on the newly planted crops abandoned by appellant as a basis for bad faith. On multiple occasions, it was argued that the crops possessed no value at the time of the dismissal hearing because they required cultivation and marketing, and appellant contended that he had no means to cultivate. In the dismissal hearing, Judge Barrett stated that it was appellant's burden to establish such fact. Given the size of the marketer's and IRS lien and the lack of capital, appellant contends that it was established. Appellant further contends that it would be much harder for appellate to establish that the crops held a value in excess of the marketer's lien when two or three parties declined to accept it. Did Judge Barrett have any information on what ultimately happened to the crop? So the crop was ultimately basically was abandoned by the appellant. As I said, he tried to find parties that would either assume the lease and take over the crop. And we contend that he offered it to the appellate, but she declined it. But anyways, he couldn't find anybody to take over the crop, and therefore he abandoned it. Clara Galvan, who is the debtor's, is the mother of the debtor's children, but they have never had a relationship other than the children. She took over five of them. Yeah, they have five children. That's a relationship. Yes. But they they never cohabitated, never had she has some another person in her life. Um, in any case, so, um, it was never established what what the value of the crops may be, but they were they were they were plantings. They were they were it was just the beginning of the of the of the plantings. Granted that there was a significant amount expended to plant. Planting is a very expensive process. Let me ask it a different way. Did the crop financier come in and take over? No. So what happened was Mrs. Mrs. Galvan raised capital. She borrowed money from family members, apparently, and then she offered him to become the the overseer, the manager of the property of the of the farming operation. So she took over. She reaped whatever profit there would be. But she also outlaid the capital to get the crop the hardest. OK, thank you. I would reserve the balance of my time for rebuttal. All right, thank you. All right. Mr. Redding. Good morning, Your Honors, I think the major problem with this case, when you review the record, is finding any evidence of good faith. What we have here is a farmer who had over two hundred thousand dollars in equipment, a lease for a farm which had been planted by my client with 20 acres of strawberry crop. So that was his standing virtually one day and within a couple of months, suddenly he is working for minimum wage for the woman that he transferred all of that property, the for nothing. And that none of those transactions were listed as required in the statement of financial affairs when the petition was initially filed. And quite frankly, the only way we learned it was unfortunate the way we learned that he had transferred it to the mother of his children was because it was either shortly before he filed or afterwards that one of his children died and we discovered it on the death certificate that that was the mother. It was obviously a scheme that he contrived in order to avoid paying my client the one hundred and forty four thousand dollars worth of labor associated with the planting of the crop. My client had filed an action against him, which is also not described in the statement of financial affairs, and I believe the record reflects that it was the only actual state court litigation pending at the time this case was filed. The debtor proposed a plan, if I recall, that exact number was that he was going to pay approximately one thousandth of a cent on every dollar on every dollar that he owed my client. I think at the end of the if he had actually had that plan confirmed, he at the end he would have paid my client a whopping one hundred and forty dollars on the one hundred and forty four thousand dollars that he actually owed her. Um, the Mr. Nomber refers to the fact that the assets the debtor received were over encumbered. I don't believe that to be true, and I don't think the record reflects that there was, in fact, an obligation owed to a marketing company, Veg Fresh, which was somewhere in the neighborhood of ninety thousand dollars at the time all the equipment was transferred. And as the record reflects, shortly after receiving that equipment, Ms. Galvin sold some of it for seventy thousand cash and negotiated a deal to pay off Veg Fresh. But one of the things I think is really important that shouldn't be overlooked is the debtor said, oh, I had this crop. I couldn't afford to do anything with it. You know, I didn't have my marketing. I didn't have my financing. Well, as reflected in the record, the very reason the debtor lost his financing with Veg Fresh was they discovered that he had transferred the leasehold, the crops and all of his equipment to Claire Galvin. In other words, the very actions that he omitted to include in his statement of financial affairs of the transfer of significant assets would have been more than sufficient to pay my client. That very action was the only reason he lost his marketing financing. There is no evidence that there was ever an IRS lien. We do know that after we went through all the gyrations of objecting to the plan, exchanging information in the form of informal discovery, two days of the evidentiary hearing, calling numerous witnesses and then briefing, you know, submitting contemporaneous closing briefs for the court's consideration. That towards the end, the IRS finally, after the case had been pending well over a year, filed an objection to the plan and made a claim that there was hundreds of thousands of dollars of taxes due, which is not a lien. It's not a lien until they record a lien and there was no evidence the IRS had a recorded lien. But back to the IRS taxes included in those taxes, as we pointed out in our closing argument was approximately $50,000 in unpaid taxes that had been, that had been disclosed in the debtors first two bankruptcy filings. So not only did he not adequately disclose what happened to all his assets and how he transferred everything to the mother of his five children. He didn't even include IRS debt that had been owing since his very initial filing. So, you know, what I said, we go through and you see all this evidence and you see, for example, you know, the night before our first evidentiary hearing, the debtor filed a number of amendments to his schedules and still didn't adequately disclose exactly what happened and the value of the equipment and the crop and all of that. He had ample opportunity. The case was pending from October of 2018 until February of 2020. And they never filed an amended plan. And I, one of the things the court will note, if you review the, the, the, the last transcript is the judge was flabbergasted to learn that the debtor throughout that whole time had only made one plan payment. So, like I said, I think that the court's finding of bad faith and dismissing the case with prejudice was justified by a cornucopia of examples of bad faith. Can, can you talk about the actual dismissal procedure? If I understand the record correctly, it was a motion to dismiss that the debtor filed under section 1307B and that your client, Mr. Reddy, objected to, at least with respect to the, the terms of the dismissal. Is it, is, is my impression correct? Well, if I may, my original objection, your honor, was to the confirmation of plan based on a number of factors, including bad faith at the initial hearing on the confirmation of plan, Judge Barish explained that he would absolutely not dismiss a case with, based upon bad faith without evidentiary hearing. We did all the evidentiary hearings. The debtor after receiving the, my recollection is the debtor after receiving the objection of the plan from the IRS brought a motion to dismiss under 1307 as he stated, which, which in many circumstances, if not most circumstances is granted just as a matter of course. But the court will note that in there, there, there was a stipulation between the parties that based upon the circumstances that had been established during the course of these evidentiary hearings, that the debtor stipulated that we would have a hearing on that request under, that the debtor made. And so that's how that was brought before the court. And there was there a hearing? Well, it was, it was conducted, I believe at the same, at that final hearing the court had with respect to, I think, believe it was set for the same date as the final arguments, your honor. So Mr. Reddy, what I think Judge Klein was trying to get at, and what we have a little bit of confusion about is it doesn't appear in the docket that you filed a separate motion to dismiss under 1307C and asserted of any of the grounds, including cause for dismissal of the case. But you did in your objections to the confirmation of the plan, assert that there was cause for dismissal. Did, did Judge Barish treat your objections as a motion? Yes. Because in the order, you indicate that there was both a pending motion by the debtor under 1307B and a quote, motion to dismiss with prejudice filed by the court, but we, but I didn't, I couldn't find one. So I'm just trying to clarify, is there a separate motion? You will not find a separate motion. It was all based upon the original objection to the confirmation. And that is how it evolved based upon the court's position. Well, there's no separate motion under section 1307C. Not by the appellee. Okay. But the appellee does object or did object to the dismissal of the case without prejudice as requested by the debtor under section 1307B. Is that correct? And there was a stipulation by the parties that that would be heard. And it was. And you also opposed the confirmation on the same basis that you were using to oppose the motion by the debtor to dismiss the case, the bad faith was what you asserted, is that correct? Yes, Your Honor. The initial motion was an objection to the confirmation based upon bad faith. And at that time, the only evidence of bad faith we were aware of was the failure of the debtor to disclose the transfer of the equipment and the farm and the crop to the mother of his children. And the fact that he presented to the court that he had made no income for the two prior years and that he had, oh, and then he was working for minimum wage and that on that basis, he proposed a plan to pay my client $140 over the course of the plan. And as the court, one of the things I forgot to note too, is one of the last amendments that the debtor did make to his schedules was admitted that the zero income that he had reported for 2017 and 18, he actually made over a million dollars in gross revenues for both of those years based upon the equipment and the crop and the farm that he transferred to Clara Galk. And, and it's clear, isn't it from the record that the, the creditor, your client, asserted that the dismissal should be with prejudice and the debtor knew for a significant period of time before the decision was made by the bankruptcy judge that at issue was whether this decision to dismiss would be with or without prejudice, you suggesting all along it should be with prejudice. I believe that it's, it's absolutely clear in the closing arguments and briefs. At the time, the evidence was being induced by judge Barrister when people were testifying, credibility was an issue, the documents, the pleadings, you had already asserted that the dismissal should be with prejudice while all of that's going on. I believe I had, but as I sit, as I sit before the court right now, I am not able to point out a specific point in the record where that was done. However, that was the point. That's why we were having two days of evidentiary hearings and calling witnesses and producing evidence. Well, why, why, why I raised that is because he raises an argument that he was deprived of notice and opportunity to defend what essentially he characterizes as a 727 decision by the bankruptcy court to deny, you know, to, to say he can never file a bankruptcy that includes these claims again. And I'm just trying to make sure it's your position that he was on notice that that was what the result would be while the evidence is being produced, while the briefs are being filed in advance of the final decision by the judge. That's absolutely my position. One other thing I believe that the record also included reflects that Claire Galvin, we did get bank records that were produced by the debtor and Ms. Galvin, I think that they indicated that over the period following the, the transfer of all those assets to her, that she had gross revenues in excess   of $1.5 million based upon crop sales and actually expanded. There's further evidence that she actually expanded the farm and increased the leasehold by some 15 to 20 more acres on adjacent property. Just wanted to add that. Where in the record is that? That would be in, I would have to pull it right now, but there was evidence of leaseholds. There was two leases. One was the one when she came in and took over the lease from the debtor. And the second one was a second lease. It was dated in 2019, I believe that it was for adjacent acreage as well that we've put into the record. Okay. All right. Anything further? I have nothing further. Judge Klein, any questions? No. Judge Gann? No. Thank you. All right. Thank you for your argument. All right, Mr. Namba, you have five minutes and a few seconds, 14 seconds. So you may commence on the battle. May I have one minute? Uh, I took some notes that, uh, I got to, I've got to recollect. I, I need one second, your honor, before I go on. I'm sorry. Is that okay? Let's stop the time clock. All right, Mr. Namba. Uh, thank you, your honor. I apologize for that. And there's something that I'm going to regret not recalling. But in any case, um, first off the IRS, uh, has filed a proof of claim. It says $190,000 of it is secured. I didn't exactly look, uh, I apologize for not recalling exactly what the lien is based on. But my, uh, my experience with IRS liens, they include any property that a debtor may own. So I would assume that includes the crops as well. So the $190,000 of that was secured. I believe it applies to the crops. Um, just minor, the failure to make a plan payment is not grounds for, uh, for, uh, for dismissal of prejudice. I mean, just about every case that, uh, there are many dismissals that are based on a failure to make a plan payment, failure to make plan payments. Um, I have a note here on adequate disclosure. Uh, and, uh, there was a point that Ms. Reddy made about, um, the debtor, oh boy, I, uh, I'm, I'm struggling. I apologize. But, uh, the debtor, if you look at, uh, the examination of a debtor, the examination that we made of, uh, of the appellee, of Ms. Godino. Oh, okay. So at the end, uh, the, Mr. Reddy said that, um, something to the effect that, uh, the debtor had the ability to, to make payment, I believe. And that the dis, oh, the dispute between, uh, VegFresh, the marketer and, and the debtor, uh, uh, was based on the fact that he transferred everything to Clara Galvan, but that is, and that, that, that happened in February of 2018, but if you look at Ms. Godino's examination, uh, she, she testified that, uh, at the end of November of 2017, the marketer approached her and said that there were no more payments that were coming to the debtor, that, that everything stopped at that point. So that was that November, 2017. Uh, and, and from then, it was at that point that he started soliciting, uh, people to take over the, the, the property. Uh, so it wasn't later on. It was, it, she will, if you look at her testimony, she will show that it happened in 2017. Um, I just want to be clear about the, the procedure. You made the motion, you, you, your client made the motion to dismiss under, uh, section 1307B. Is that correct? Yes, because he was no longer eligible given the size of the IRS lane. Uh, excuse me, the IRS claim, it was the unsecured portion that made him eligible, ineligible. Um, and I'm sorry. Um, whatever other point I was going to make, I have now, uh, since I'm not going to be able to recall within the next minute. All right. Um, any questions, Judge Gann? I, I guess the only thing I wanted to know is, she takes a position that there was a understanding between the court and the parties, that there was a motion to dismiss under 1307C that the court was considering based on his opposition to your confirmation. Yeah, he, yes. Uh, Mr. Reddy did say that, uh, he would be seeking dismissal under 1307C. Uh, and so, uh, yes, that's, uh, that's why, uh, there was a hearing on my motion to dismiss. In effect, you beat him to the punch. Well, I mean, was it a motion to dismiss? I just, I just realized with, since we were ineligible, there was no, no reason to continue with that, uh, hearing. But as I say, the circumstances of the evidentiary hearing on planned confirmation, I think it was unfair without having done the discovery, without, without, if this were an adversary where we knew that his, uh, uh, his, uh, discharge was, uh, up for grabs, I would have, we would have demanded that this not be this sort of summary proceeding that it would, that we thought it was going to be. That, uh, I mean, it, the, the, the testimony, direct testimony was done by alternate declaration. I would have wanted to have done discovery and examine my, had, had my exam, witness examined as well as, uh, Ms. Godino and her son and so forth. This was not the proper procedure for the type of remedy that, that it ultimately resulted in. Right. Your time would let you go a little bit past your time. I'm sorry. Thank you. That's okay. That's okay. It's my job to cut you off and I didn't. So no, I am. Um, so with that, thank you for your good arguments. This matter will be under submission and we are in recess. Thank you very much. Thank the court. Thank you. And we, the panel will reconvene on the other line. Thank you.
judges: Taylor, Spraker, Gan